UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRYSTAL FAYE POTTERF, *et al.*,

      Plaintiffs,

v.

DREW F. WESSELS, *et al.*,

      Defendants.

Case No. 26-cv-10860

Hon. Matthew F. Leitman

_____/

**ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF No. 3)**

Plaintiffs Joshua Raymond Potterf ("Joshua") and Krystal Faye Potterf ("Krystal")[1] are criminal defendants in two separate cases pending in Michigan state court. Joshua has been charged in the Tuscola County Circuit Court with domestic violence and resisting arrest; Krystal has been charged in Michigan's 71-B District Court with retail fraud. Now pending before the Court is the Potterfs' motion for a temporary restraining order and preliminary injunction.[2] (*See* Mot., ECF No. 3.) In

---

[1] To avoid confusion, and because they share the same last name, the Court will refer to Joshua Potterf as "Joshua" and Krystal Potterf as "Krystal." The Court does not intend to disrespect Plaintiffs in any way by using their first names.

[2] As originally filed, the motion sought relief on an *ex parte* basis. On April 8, 2026, the Court denied the motion to the extent that it seeks *ex parte* relief because the Court concluded that the Potterfs had not shown an entitlement to relief prior to the motion being served on the Defendants. (*See* Order, ECF No. 15.) Following the entry of that order, the Potterfs filed a "Notice of Imminent Deadline and Request for Emergency Ruling." (Notice, ECF No. 18.) In that notice, the Potterfs said that

1

the motion, the Potterfs seek a "stay [of] all state court proceedings" in the two criminal cases. (*Id.*, PageID.47-48.)  For the reasons explained below, the motion is **DENIED** because the Potterfs have not shown an entitlement to the relief they seek.[3]

**I**

**A**

The facts as alleged by the Potterfs are somewhat difficult to follow.  It appears that on December 19, 2024, Joshua was arrested at his home by Defendant Drew Wessels, a police officer with the City of Caro Police Department. (*See* Compl. at ¶ 8, ECF No. 1, PageID.2.)  According to the Potterfs, Wessels fabricated his basis for entering their house and arresting Joshua.  They say that Wessels claimed to have witnessed Joshua "hawking over" Krystal as he (Wessels) stood outside of their house, but they contend that Wessels could not possibly have made that observation because the blinds to their home were closed and it was not possible to see into their residence. (*Id.* at ¶ 9, PageID.3.)  The Potterfs say that Wessels then illegally entered

---

there was a "plea cutoff hearing" scheduled for April 13, 2026, in Joshua's criminal case and that Krystal had an "active bench warrant" issued against her that "create[d] an immediate risk of incarceration." (*Id.*)  The Potterfs thus urged the Court to address their motion on the merits at this time. (*See id.*)  While the Court previously declined to *grant* relief to the Potterfs on an *ex parte* basis, the Court proceeds on that basis here because it is *denying* relief to them, and a denial of relief does not prejudice the Defendants.

[3] The Court concludes that it may resolve the Potterfs' motion without a hearing. *See* E.D. Mich. Local Rule 7.1(f)(2).

their home and arrested Joshua. (*See id.* at ¶ 15, PageID.4.)  Joshua was subsequently charged with both domestic violence and resisting and obstructing. (*See id.*)  Those criminal charges are now pending in the Tuscola County Circuit Court.

On February 27, 2025, Krystal testified in her husband's defense at his state-court preliminary examination on the domestic violence and resisting and obstructing charges. (*See id.* at ¶ 16, PageID.4.)  The Potterfs say that her "testimony directly challenged the fabricated narrative maintained by Defendant Wessels." (*Id.*)  The Potterfs claim that after Krystal testified, she "became a target for state-sanctioned retribution designed to punish her for her speech and obstruct the truth-seeking function of the court." (*Id.*)  More specifically, they say that on April 9, 2025, Wessels "maliciously initiated a retaliatory 3rd Degree Retail Fraud charge against Krystal." (*Id.* at ¶ 17, PageID.4.)  They insist that Wessels "lacked even a 'scintilla' of probable cause" for that charge and that it "was a direct 'tit-for-tat' response to her exculpatory testimony given just weeks prior" at Joshua's preliminary examination. (*Id.*)  That retail fraud claim is pending in Michigan's 71-B District Court.

**B**

The Potterfs are indigent, and Joshua says that he suffers from "multiple anxiety and social disorders." (State Ct. Req., ECF No. 1, PageID.26.)  Based on those circumstances, the Potterfs sought various forms of relief from the state courts.

3

First, on February 6, 2026, Joshua filed a request with the Tuscola County Circuit Court for an accommodation under the Americans with Disabilities Act (the "ADA"). (*See id.*, PageID.25-27.)   In that request, he sought permission to electronically file all documents in "ALL FUTURE CRIMINAL AND CIVIL MATTERS" (the "Blanket Future E-filing Request"). (*Id.*)  In support of the Blanket Future E-filing Request, he explained that he suffered from anxiety disorders that were "psychologically debilitating" and that were "triggered by intense, high-pressure, and/or socially demanding environments such as court rooms." (*Id.*, PageID.26.)   Joshua further explained that e-filing was the only solution to his problem – and that filing by mail or in person was not possible – because (1) he "ha[d] no way to print copies of legal pleadings" and (2) his vehicle had recently been destroyed in an accident which prevented him from being able to deliver documents to the courthouse or post office. (*Id.*)

On February 18, 2026, Defendant Sheila Long, the Tuscola County Circuit Court Administrator and Americans with Disabilities Act Coordinator, denied the Blanket Future E-filing Request on the ground that Joshua did "not currently have a document to file." (St. Ct. Resp., ECF No. 1, PageID.28.)   Long's denial did not say that Joshua would be denied permission to e-file when and if he actually had a document to file.  The denial said only that his blanket request for electronic filing

access – in the absence of a specific document that needed to be electronically filed – had been denied. (*See id.*)

Krystal also sought an accommodation in her criminal case.  She requested that she be allowed to participate in her criminal proceedings "remote[ly]" instead of being required to appear in person. (*Id.*)  She insists that her requested remote-participation accommodation is essential because she "is indigent and lacks transportation to the court located 26 miles away" from her home. (Mot., ECF No. 3, PageID.47.)

The 71-B District Court denied Krystal's request to appear remotely and required her to appear in person. (*See id.*)  When Krystal later failed to personally appear at a proceeding in her criminal case, the state court issued a bench warrant for her arrest. (*See id.*; *See also* Compl. at ¶ 55, ECF No. 1, PageID.11.)  Krystal asserts that the refusal to permit her to appear remotely amounts to a "wealth-based barrier" to participation in the criminal proceedings that is designed to "silence" her and prevent her from being able to defend herself. (Compl. at ¶ 23, PageID.6.)

According to Krystal, she wishes to file a Petition for a Writ of Superintending Control challenging the 71-B District Court's refusal to permit her to appear remotely.  But she says that she cannot afford to pay the filing fee for such a petition. She claims that the Tuscola County Circuit Court is obligated to pay these "service fees" on her behalf because she is indigent, and she says that the court's failure to

5

do so "constitutes a direct, lawless violation of a ministerial duty, effectively imposing a 'pay-to-play' barrier on [her] fundamental constitutional right" to defend herself. (*Id.* at ¶¶ 19, 23-24, PageID.5-6.)

## C

The Potterfs filed this federal action against Wessels, Long, and Tuscola County on March 16, 2026. (*See* Compl., ECF No. 1.)  They bring the following claims against the Defendants:

- A Fourth Amendment claim for illegal search and seizure against Wessels (Count I).  In this Count, the Potterfs allege that Wessels "illegal[ly] ent[ered]" their home and that his unconstitutional conduct "resulted in" Joshua's "arrest and prosecution." (*Id.* at ¶¶ 35-38, PageID.8.)

- A First Amendment retaliatory prosecution claim against Wessels (Count II).  In this Count, the Potterfs say that "Wessels initiated a 3rd Degree Retail Fraud charge against Krystal" and that that charge was "initiated without probable cause and with a malicious retaliatory motive to punish Krystal [] for her protected speech and to chill future testimony." (*Id.* at ¶¶ 39-41, PageID.9.)

- An ADA claim against Long (Count III).  In this Count, the Potterfs claim that Long wrongfully denied Joshua's Blanket Future E-filing Request and

that that denial "creat[ed] a discriminatory barrier to court access" in violation of the ADA (*Id.* at ¶¶ 42-50, PageID.9-10.)

- Finally, a Fourteenth Amendment denial of access to the courts claim against Tuscola County (Count IV).  In this Count, the Potterfs allege that that the County has imposed "wealth-based barrier[s]" that have prevented them from being able to fully defend themselves in their criminal prosecutions. (*Id.* at ¶¶ 51-60, PageID10-12.)

As relief for these alleged constitutional and statutory violations, the Potterfs ask the Court to (1) issue a declaratory judgment that Wessels' "warrantless entry" into their home was a "flagrant violation of the Fourth Amendment," (2) stay all state-court criminal proceedings brought against them, (3) require the Tuscola County Circuit Court to grant Joshua's Blanket Future E-filing Request, and (4) award them $1,180,000 in compensatory and punitive damages. (*Id.*, PageID.13-14.)

As noted above, the Potterfs have also filed a motion seeking a "stay [of] all state criminal proceedings" in the two pending state-court criminal cases brought against them. (Mot., ECF No. 3, PageID.47.)  They contend that the Court should stay the proceedings against Joshua because (1) Wessels' "warrantless entry" into their home was based on Wessels' false claim that he could see into the Potterfs' home and (2) in violation of the ADA, the state court impeded Joshua's ability to defend himself by denying the Blanket Future E-filing Request. (*Id.* at ¶¶ 2-3, 6,

PageID.47-48.)   They argue that the Court should stay the criminal proceedings against Krystal because the denial of her request to appear remotely (1) amounts to a "wealth-based barrier" to her full participation in the proceedings and (2) led to a "failure to appear" warrant being issued against her. (*Id.* at ¶¶ 4-5, PageID.47-48.)

On April 8, 2026, the Court denied the motion to the extent it sought relief on an *ex parte* basis (*see* Order, ECF No. 15), and it now denies the remainder of the motion for the reasons explained below.

## II

A district court balances four factors when considering a motion for a preliminary injunction or a temporary restraining order: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *S. Glazer's Distribs. of Ohio v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (internal quotations omitted).

"[T]hese are factors to be balanced, not prerequisites to be met." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[N]o one factor is controlling." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).   However, "[w]hen evaluating these factors for an alleged constitutional violation, the likelihood of

success on the merits often will be the determinative factor." *Thompson v. DeWine*, 959 F.3d 804, 807 (6th Cir. 2020) (internal quotation marks omitted).

Finally, where, as here, a plaintiff seeks to enjoin ongoing state-court criminal proceedings, a plaintiff "must first demonstrate that 'great and immediate' irreparable harm would occur absent federal intervention." *Ballard v. Stanton*, 833 F.2d 593, 594 (6th Cir. 1987) (quoting *Younger v. Harris,* 401 U.S. 37, 46 (1971)). *See also Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 626 (1986) ("[A] federal court should not enjoin a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury"); *Fieger v. Cox*, 524 F.3d 770, 774–75 (6th Cir. 2008) (explaining that "the Supreme Court [has] held that federal injunctions against a state criminal law enforcement process could be issued only 'under extraordinary circumstances where the danger of irreparable loss is both great and immediate'") (quoting *Younger*, 401 U.S. at 45).

## III

### A

The Court begins with Joshua's request for preliminary injunctive relief. As noted above, he seeks a stay of the criminal proceedings against him on the basis that he would suffer irreparable harm if those proceedings move ahead notwithstanding the denial of the Blanket Future E-filing Request. This theory of

irreparable harm seems to rest on Joshua's contention that the denial of the Blanket Future E-filing Request eviscerates his ability to defend himself in his criminal proceedings.  The Court disagrees with that contention and therefore finds that Joshua has failed to make the required irreparable harm showing.

The denial of the Blanket Future E-filing Request has not left Joshua unable to defend himself in the state-court criminal proceedings.  That denial does not categorically prohibit Joshua from ever e-filing papers.  Instead, the state court issued that denial because, at the time Joshua made the Blanket Future E-filing Request, he did not identify any particular document that he wanted to file electronically. (*See* St. Ct. Resp., ECF No. 1, PageID.28.)  Joshua has not persuaded the Court that the state court would deny him permission to e-file a particular and identified document that he presented for filing in his criminal case.  Moreover, Joshua has not identified any specific document that (1) he wants to file electronically or has tried to file electronically and (2) the state court has prevented him from filing electronically.  Finally, Joshua has not persuaded the Court that he lacks other ways – besides written filings – to raise issues and defenses with the state court.  For instance, he has not shown that he could not orally present matters to the state court during on-the-record proceedings.  For all of these reasons, Joshua has failed to show that great and immediate irreparable harm would occur if the Court

10

permits the state court criminal proceedings to move ahead even though the state court previously denied the Blanket Future E-filing Request.

**B**

The Court next turns to Krystal's request for preliminary injunctive relief. Like Joshua, she asks the Court to enjoin the criminal proceedings against her. She says that allowing those proceedings to move ahead – with the requirement that she appear in-person rather than remotely – would violate her constitutional rights. In support of that claim, she says that she is "indigent," "lacks transportation to the court located 26 miles away," that her request for remote participation in her criminal proceedings "was denied," and that after she failed to appear in person for a proceeding in her criminal prosecution, a "bench warrant" was issued for her arrest. (Mot., ECF No. 3, PageID.47.) Krystal insists that the bench warrant "was issued as a direct result of [a] 'systematic wealth-based barrier'" and that the "the denial of remote participation" has resulted in an "unconstitutional administrative lockout." (Notice, ECF No. 18, PageID.97; Mot., ECF No. 3, PageID.47-48.)

Krystal is not entitled to an injunction staying the state-court proceedings because she has not shown a strong likelihood of success on the merits of her claim that requiring her to appear in person for her proceedings would violate her constitutional rights. The Court understands and sympathizes with the difficulties Krystal is facing as an indigent criminal defendant. But she has not identified any

11

legal authority that supports the proposition that a state court violates a criminal defendant's constitutional rights where the state court requires the defendant to appear in person for proceedings in her criminal case – even where the criminal defendant is indigent.  And in the absence of that authority, Krystal has failed to show a strong likelihood of success on the merits of her claims.

## D

Finally, the Potterfs have not shown that the other injunctive factors, considered individually or collectively, entitle them to preliminary injunctive relief. For example, they have not even addressed whether the injunction would cause substantial harm to others or whether the public interest would be served by the issuance of an injunction.  Nor is the Court persuaded, at this time, that Joshua has shown a strong likelihood of prevailing on his claims.  The remaining injunctive factors do not support granting the Potterfs' motion.

## IV

For all of the reasons explained above, the Potterfs have not shown an entitlement to emergency preliminary relief.  Their motion for a temporary restraining order and preliminary injunction (ECF No. 3) is therefore **DENIED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 10, 2026

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 10, 2026, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126